MICHAEL J. HEYMAN
United States Attorney

SETH BRICKEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: seth.brickey-smith@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | No. 3: 23-cr-00099-SLG-MMS |
|---|---|
| Plaintiff, | |
| vs. | |
| MICHAEL GALE NASH, | |
| Defendant. | |

## MOTION TO DISMISS

For the reason of the defendant's ongoing mental incompetency to stand trial, the United States of America, by and through undersigned counsel, hereby requests leave of the court to dismiss the Indictment without prejudice pursuant to Fed. R. Crim. P. 48(a). Prior to entering an order of dismissal and ordering the defendant's release, the United States further requests that the Court order the director of FMC Devens to determine whether a certificate pursuant to 18 U.S.C. § 4246—certifying whether the defendant's "release would create a substantial risk of bodily injury to another person or

serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available"—should issue.

## BACKGROUND

On the morning of October 2, 2023, the defendant approached the First National Bank located at 201 W 36th Avenue, Anchorage, AK 99503. Dkt. 1-1 at 4. He tried to enter the bank's main doors at around 9:00 a.m. Dkt. 1-1 at 4. The bank's staff tried to tell the defendant that the bank did not open until 10:00 a.m. Dkt. 1-1 at 4. But the defendant slipped a note through the doors, which read, "This is a robbery – put the money in a bag & I will walk out. This is a robbery. God help us all." Dkt. 1-1 at 5. After receiving this note, the bank staff locked the doors and alerted security and law enforcement. Dkt. 1-1 at 5. The employees inside the bank feared the defendant would take an arriving employee outside the bank or a customer hostage. Dkt. 1-1 at 4. Law enforcement arrived on scene and arrested the defendant. Dkt. 1-1 at 4. The defendant was initially charged and detained pursuant to a federal criminal complaint. Dkt. 1. On October 19, 2023, a grand jury subsequently charged the defendant with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). Dkt. 17. The defendant was previously convicted of robbing the same bank branch in 2018. *United States v. Nash*, 3:18-CR-00071-01-TMB.

During a status conference held on December 27, 2023, defense counsel alerted the Court to concerns regarding the defendant's competency. Dkt. 24. The defendant refused to be transported for that hearing. Dkt. 24. On March 5, 2024, the defendant again refused to be transported for a status hearing. Dkt. 35. Defense counsel represented that the

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS    Page 2 of 10
Case 3:23-cr-00099-SLG-MMS    Document 82    Filed 08/22/25    Page 2 of 10

defendant was not taking medication and refused to meet with his attorney or health providers. Dkt. 35. The government made an oral motion for a competency hearing, which was granted. Dkt. 35, 37.

*FDC SeaTac Evaluation*

Pursuant to the Court's order, the defendant was transported to Federal Detention Center (FDC) SeaTac for a forensic evaluation. Dkt. 38. Dr. Ryan Nybo, Psy.D. evaluated the defendant and issued a report. Dkt. 39. Because the defendant refused to engage with evaluators, the procedures of the evaluation involved observations of the defendant's behavior while at FDC SeaTac, and information gathered from legal documents, medical and mental health records, and interviews with FDC SeaTac staff. Dkt. 39 at 2. The medical records evaluators relied upon included reports from the defendant's previous stay at FDC SeaTac in 2019, where he was diagnosed with Unspecified Schizophrenia and Other Psychotic Disorder and Antisocial Personality Disorder. Dkt. 39 at 3–4. The defendant's records also suggested a pattern of anger, suicidal ideation, and psychosis. Dkt. 39 at 3.

Additionally, evaluators reviewed records from Alaska Psychiatric Institute (API), who treated the defendant in 2023, pursuant to a state court order for involuntary treatment. Dkt. 39 at 5. API observed the defendant presented as "floridly psychotic," "agitated," "verbally aggressive," and "extremely paranoid." API diagnosed the defendant with "an unspecified chronic psychotic disorder" and prescribed the antipsychotic medication Haldol, which was gradually increased throughout the course of his hospitalization.

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS    Page 3 of 10
Case 3:23-cr-00099-SLG-MMS    Document 82    Filed 08/22/25    Page 3 of 10

Dkt. 39 at 5. Haldol was effective, and while taking it the defendant was observed talking intelligently and politely. Dkt. 39 at 5.

Based on his review of the available information, Dr. Nybo found that the defendant suffers from Unspecified Schizophrenia Spectrum and Other Psychotic Disorder, as described in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5). Dkt. 39 at 7. He further opined that the defendant's condition likely impairs his present ability to assist counsel in his defense and rationally understand the nature and consequences of the court proceedings brought against him. Dkt. 39. He recommended that the defendant be committed to the Bureau of Prisons for further evaluation and restoration. Dkt. 39.

The defendant refused to be transported for a hearing on June 10, 2024. At that hearing, the Court adopted the findings in Dr. Nybo's report. Dkt. 41. The parties filed a joint motion for commitment and restoration, which was granted. Dkt. 42, 43.

*FMC Devens Evaluation*

On August 28, 2024, the defendant was admitted to Federal Medical Center (FMC) Devens pursuant the Court's order. Dkt. 44. On November 25, 2024, FMC Devens transmitted its forensic report to the Court. Dkt. 44. The report was prepared by a forensic psychologist, Dr. Chad Brinkley, Ph.D., ABPP, who was a member of the defendant's competency restoration team. Dkt. 44 at 3. Also on the team was psychiatrist Dr. Dean Cutillar, D.O. Dkt. 44 at 3.

//

//

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS    Page 4 of 10
Case 3:23-cr-00099-SLG-MMS    Document 82    Filed 08/22/25    Page 4 of 10

Dr. Brinkley reported that the defendant was observed by correctional staff and mental health providers at FMC Devens. Dkt. 45 at 3. But the defendant refused to cooperate with assessments and forensic interviews. Dkt. 45 at 3. Evaluators at FMC Devens reviewed information on the defendant's history from various sources, including: Dr. Nybo's evaluation, the Presentence Report from the defendant's previous federal conviction (*United States v. Nash*, No. 3:18-CR-00071-001-TMB), Alaska Department of Corrections Records from 2022 and 2023, API records from 2023, and various Bureau of Prisons records.

The defendant's mental health treatment history is conceisly summarized in Dr. Brinkley's report:

> There is evidence Mr. Nash has experienced various symptoms in the past including hallucinations, paranoia, bizarre/unusual ideation, irritability, and poor hygiene. His symptoms have impacted his ability to function effectively in a variety of settings (the community, psychiatric facilities, prisons). Records indicate he has been given various diagnoses in the past including Unspecified Schizophrenia, Schizoaffective Disorder, Delusional Disorder, and Antisocial Personality Disorder.
>
> Mr. Nash has been referred for inpatient mental health treatment multiple times. Records indicate he has been prescribed various psychiatric medications in the past including Haldol/Haloperidol (an anti-psychotic medication), Zoloft/Sertraline (an anti-depressant), Ativan/Lorazepam (an anti-anxiety medication), and Benadryl (a medication sometimes used to treat side effects of psychiatric medication). It appears Mr. Nash has not generally been willing to take medication voluntarily. Records indicate he has required treatment with involuntary medication in the past. The available clinical documentation indicates Mr. Nash did respond well to treatment with antipsychotic medication in the past.
>
> Records indicate Mr. Nash does have a history of self-harm. He cut himself with a broken bottle in 2007. He also has a history of reporting suicidal/homicidal ideation. . . .

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS  Page 5 of 10
Case 3:23-cr-00099-SLG-MMS   Document 82   Filed 08/22/25   Page 5 of 10

Dkt. 45 at 5. Based on the evaluator's observations and other available records, Dr. Brinkley concluded that the defendant suffers from Unspecified Schizophrenia Spectrum and Other Psychotic Disorder, which renders him incompetent to proceed with his case. Dkt. 45 at 16.

Based on Dr. Brinkley's report, defense counsel made an oral motion for a hearing pursuant to *Sell v. United States* on December 17, 2024, which was granted. Dkt. 47. The Court held a *Sell* hearing on March 10, 2025, at which Dr. Brinkley testified. Dkt. 56. The Court found that the government had met its burden on the first three *Sell* factors but had not met its burden to show that the treatment plan outlined in Dr. Brinkley's report was medically appropriate. Dkt. 56. Accordingly, the Court denied the government's request for an order of involuntary medication without prejudice. Dkt. 56.

*Involuntary Administration of Antipsychotics*

On August 12, 2025, at approximately 10:30 a.m., the defendant displayed signs of disruptive behavior and imminent violence by attempting to spit on an Associate Warden at FMC Devens. The Associate Warden had instructed inmate the defendant to wear his footwear when leaving his cell and while walking on the unit. The defendant became belligerent and stated, "fuck you," while displaying his right middle finger. The Associate Warden again instructed inmate the defendant to wear footwear when leaving his cell. The defendant responded, "fuck you," and spat at the Associate Warden. Subsequently, the defendant was placed on the wall and responding staff escorted him out of his cell and escorted to the secure housing unit, where he was assessed.

//

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS      Page 6 of 10
Case 3:23-cr-00099-SLG-MMS   Document 82   Filed 08/22/25   Page 6 of 10

Dr. Vikram Kambampati, Chief Psychiatrist, evaluated the defendant. Dr. Kambampati spoke with the defendant, who stated he behaved aggressively to the staff member because "I don't like Negros." When Dr. Kambampati asked additional questions, the defendant became profane and did not engage any further. Upon reviewing the defendant's recent encounters with staff and notes from prior evaluations, Dr. Kambampati assessed that the defendant was behaving in a way that was a danger to serious harm toothers as a result of schizophrenia, which was a psychiatric emergency. Accordingly, Dr. Kambampati ordered the defendant be involuntarily medicated with haloperidol (5mg) and diphenhydramine (50mg).

## DISCUSSION

After a district court has found, by a preponderance of the evidence, that a defendant is presently suffering from a mental disease or defect rendering him mentally incompetent, the court shall commit the defendant to the custody of the Attorney General. 18 U.S.C. 4241(d). After the court's determination, the statute provides:

> The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) for an additional reasonable period of time until—
>
> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS     Page 7 of 10
Case 3:23-cr-00099-SLG-MMS    Document 82    Filed 08/22/25    Page 7 of 10

> (B) the pending charges against him are disposed of according to law;
>
> whichever is earlier.
>
> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. 4241(d).

For those defendants who are found to be unrestorable or whose charges have been disposed of, section 18 U.S.C. § 4246(a) provides:

> If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined.

District courts have authority to temporarily commit an arrestee for the purpose of allowing the director of a medical facility to decide whether a certificate should issue. In authorizing the director to file a dangerousness certification, § 4246 necessarily contemplates the temporary commitment of that person so that the director can conduct the evaluation necessary to make the certification decision. *United States v. Godinez-Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009)*See United States v. Godinez-Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009); *see also United States v. Bonin*, 541 F.3d 399, 401 (5th Cir. 2008) (directing the district court to temporarily commit the defendant to the custody of the Attorney General "so that the director of the facility can determine whether a certificate

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS        Page 8 of 10
Case 3:23-cr-00099-SLG-MMS   Document 82   Filed 08/22/25   Page 8 of 10

should issue"). The Ninth Circuit has held that the duration of such temporary commitments are governed by 18 U.S.C. § 4247(b) and, thus, may not exceed 45 days. *Godinez-Ortiz*, 563 F.3d at 1032.

Here, the defendant's recent violent behavior in custody warranted emergency involuntary medication. He has a long history of anger, suicidal ideation, and psychosis. Before the defendant is released from custody and into the community, the Bureau of Prisons should be given the opportunity to determine whether the defendant will pose a danger to others, and if so, to file a certification with the United States District Court for the District of Massachusetts to initiate further proceedings pursuant to 18 U.S.C. § 4246.

## CONCLUSION

For the foregoing reasons, the United States requests the Court requests leave of the court to dismiss the Indictment without prejudice pursuant to Fed. R. Crim. P. 48(a). But further requests that any order of dismissal or release be held in abeyance for no more than 45 days, pending an determination of the Director of FMC Devens on whether a certificate should issue pursuant to 18 U.S.C. § 4246.

//

//

//

//

//

//

Undersigned counsel has conferred with counsel for defendant, who does not oppose the motion to dismiss, but does oppose further hospitalization or detention pending a finding with regard to dangerousness.

RESPECTFULLY SUBMITTED August 22, 2025 at Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ Seth Brickey
SETH BRICKEY
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2025 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ Seth Brickey

*U.S. v. Nash*
3: 23-cr-00099-SLG-MMS    Page 10 of 10
Case 3:23-cr-00099-SLG-MMS    Document 82    Filed 08/22/25    Page 10 of 10